Daron HILL, et al., Plaintiffs,

v.

SHELL OIL COMPANY,
et al., Defendants.

No. 98 C 5766.

United States District Court,
N.D. Illinois,
Eastern Division.

March 20, 2002.

Thomas R. Meites, Micheal M. Mulder, Paul William Mollica, Johanna Josie Raimond, Meites, Mulder, Burger & Mollica, Chicago, IL, for plaintiffs.

Steven Francis Molo, Gerald C. Peterson, Norman K. Beck, Winston & Strawn, Chicago, IL, Gerald David Zansitis, Peter Francis Heraty, Jones, Ware & Grenard, Chicago, IL, Thaddeus Leonard Wilson, Brookins & Wilson, Chicago, IL, Ray G. Rezner, James Robert Vogler, Randall Lee Oyler, Barack, Ferrazzano, Kirschbaum, Perlman & Nagelberg, Chicago, IL, R. Delacy Peters, Jr., Beverly Cassandra Bryant, The Peters Law Firm, Chicago, IL, Manuel Sanchez, John Scott Huntley, Allison Smith Heverin, Sanchez & Daniels, Chicago, IL, Daniel Thomas Grosso, MacKelvie & Associates, P.C., Connie P. Limperis, Fisher and Phillips, L.L.P., Chicago, IL, George B. Collins, Christopher Robert Bargione, Adrian M. Vuckovich, Collins & Bargione, Chicago, IL, Joseph Michael Gagliardo, Gregory Robert James, Jr., Clifford Raymond Perry, III, Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Ltd., Chicago, IL, Robert Joseph Meyer, Sheryl A. Pethers, Debrai G. Haile, Swanson, Martin & Bell, Chicago, IL, Debrai G. Haile, Wessels & Pautsch, Chicago, IL, Cary S. Fleischer, Alan R. Dolinko, Jeralyn Hartwick Baran, Chuhak & Tecson, Chicago, IL, Timothy Alan Wolfe, Meckler, Bulger & Tilson, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

MORAN, Senior District Judge.

Plaintiffs bring this purported class action on behalf of African–American customers of Shell-brand gas stations, alleging that Shell-brand stations require that African–American customers prepay for gasoline while allowing white customers to pay after pumping gas. Defendants Shell Oil Company, Motiva Enterprises, LLC, and Equilon Enterprises (collectively "Shell defendants"), move for a protective order prohibiting plaintiffs from videotaping Shell defendants' employees and alleged employee agents. For the following reasons, the motion is denied.

Over the last six years plaintiffs have, as part of their investigation of alleged discrimination, on occasion videotaped employees of Shell stations and independent dealerships. The taping occurred prior to and after the filing of this action, most recently with the assistance of counsel in January and February of 2001. Plaintiffs first made defendants aware of this taping in 1998, and defendants raised concerns after the February 2001 taping. The basic scenario in each tape consists of an African–American customer and a white customer (those aiding in the investigation) driving into the station within minutes of each other, and using the same pump. Defendants claim that plaintiffs had substantive discussions with employees during these taped visits in order to determine if the stations engaged in the alleged discrimination.

Shell defendants move for a protective order prohibiting future investigative videotaping under Federal Rule of Civil Procedure 26(c). They argue that a protective order is necessary to prevent violations of ethical rules, specifically Northern District of Illinois Rules of Professional Conduct 4.2 and alternatively Rule 4.3. *See*

N.D.Ill.LR 83.54.2, 83.54.3. Since employees are represented parties under Rule 4.2 there is no need to address defendants' arguments under Rule 4.3, which governs interactions with non-represented parties.

■ Rule 4.2 states that

[d]uring the course of representing a client a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter unless the first lawyer has obtained the prior consent of the lawyer representing such other party or as may otherwise be authorized by law.

The purpose of this rule is to prevent lawyers from circumventing opposing counsel to get careless statements from adverse parties; to protect the integrity of the attorney-client relationship; to prevent the inadvertent disclosure of privileged information; and to facilitate settlement by channeling disputes through lawyers familiar with the negotiation process. *Guillen v. City of Chicago,* 956 F.Supp. 1416, 1427 (N.D.Ill.1997).

Plaintiffs assert that Rule 4.2 is not implicated in this case because the employees in the tapes are not represented parties; the interactions that occurred are not the type of communication prohibited by this rule; and the investigation does not offend the policies underlying this rule. Additionally, plaintiffs argue that the defendants strategically delayed bringing this motion and it should be denied for lack of timeliness: While there may be strategy in bringing this motion while a class certification motion is pending, defendants have not waited too long to be heard, especially in light of the history and negotiations that have led up to its filing.

We first address whether the station employees are represented parties as contemplated by Rule 4.2. Plaintiffs rely on *Apple Corps Ltd. MPL v. Int'l Collectors*

*Soc.,* 15 F.Supp.2d 456 (D.N.J.1998), to support their assertion that we should narrowly define represented parties. Unlike the case before us, *Apple Corps* was decided under the "litigation control group" definition of represented parties, which includes only an organizational entity and members of its litigation control group. New Jersey courts have found that lower level employees who were not significantly involved in the determination of a corporation's legal position are not covered by Rule 4.2. *Id* at 474.

■ The Northern District of Illinois' comment to Rule 4.2 provides three categories of corporation employees that are considered represented for purposes of the rule's prohibition: employees who have managerial responsibility on behalf of the organization; employees whose acts or omissions in the matter can be imputed to the organization; and employees whose admissions would be binding on the organization. *Orlowski v. Dominick's Finer Foods, Inc.,* 937 F.Supp. 723, 728 (N.D.Ill. 1996); *Weibrecht v. Southern Illinois Transfer, Inc.,* 241 F.3d 875, (7th Cir. 2001). Since Shell defendants' station attendants do not appear to have managerial responsibilities as contemplated by the rule, they are not represented parties under the first category. However, the second two categories of protected employees are applicable here.

In determining whether Rule 4.2 covers non-managerial employees, courts have recognized the tension between a party's need to conduct low-cost informal discovery, and an opposing party's need to protect employees from making ill-considered statements or admissions. *See e.g. In re Air Crash Disaster Near Roselawn, Indiana,* 909 F.Supp. 1116, 1121 (N.D.Ill. 1995); *Orlowski v. Dominick's Finer Foods, Inc.,* 937 F.Supp. 723, 730 (N.D.Ill. 1996). The conduct of station attendants

is at the heart of this litigation, and it is being offered as an example of the alleged discrimination of the defendants. As a result, the employees fall under the second category of Rule 4.2: employees whose acts or omissions in the matter at issue can be imputed to the organization. *Weibrecht*, 241 F.3d at 883 (employee is covered by Rule 4.2 since his decision about how many workers to use and whether to require safety equipment would be imputed to employer in negligence suit).

■ The station employees are also potentially covered under the admissions category of Rule 4.2. The scope of employee statements that constitute employer admissions is provided in Federal Rule of Evidence 801(d)(2)(D), which allows an employee's statement to be used against an employer as an admission if it is made during the existence of the employment relationship and concerns a matter within his agency or employment. If the employee's statements could be brought in as an admission against the defendant employer, then the employees are covered by Rule 4.2's prohibition. *In re Air Crash*, 909 F.Supp. at 1122. Put another way, if a plaintiff does not intend to enter the employee's statements as evidence of the employer's admission, then Rule 4.2 is not implicated and plaintiff is free to have informal contact with non-managerial employees. *Orlowski* at 735; *B.H. v. Johnson*, 128 F.R.D. 659, 662 (N.D.Ill.1989); *Kole v. Loyola University of Chicago*, 1997 WL 47454, *4 (N.D.Ill.1997) (employees are represented if anything the employees do or say could bind the defendants in this lawsuit).

■ Since the station employees are represented parties under Rule 4.2, we must determine if the rule prohibits videotaping these employees in the manner that has been presented. Plaintiffs claim that any contact between the employees and plaintiff investigators consists of normal customer business transactions and lies outside the scope of the rule's prohibition. *Apple Corps Ltd., MPL v. Int'l Collectors Soc.*, 15 F.Supp.2d 456 (D.N.J.1998); *Gidatex v. Campaniello Imports, Ltd.*, 82 F.Supp.2d 119 (S.D.N.Y.1999). In *Gidatex*, plaintiff used private investigators who secretly taped conversations with defendant's salespeople. The court found that the sales clerks were represented parties under New York's disciplinary rules since the plaintiff was seeking to use the sales clerks' statements to impute liability to the defendant employer. *Id.* at 125. While the investigators did have conversations with the sales clerks about products, the court found no violation of Rule 4.2 since the investigators "did not interview the sales clerks or trick them into making statements they otherwise would not have made. Rather, the investigators merely recorded the normal business routine...." *Id.* at 126.

Defendants ask that we follow a South Dakota case which is factually similar to *Gidatex* but which came to the opposite conclusion. *See Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.*, 144 F.Supp.2d 1147 (D.S.D.2001). In *Midwest Motor Sports*, defense counsel hired investigators to go to plaintiff's store, pose as consumers, record any interactions and elicit evidence to be used in the pending case. *Id.* at 1152. The court found that the audio-taping of the salesman without his knowledge violated Rule 4.2 since the secret taping was an act of trickery. *Id.* at 1159. Even if the salesman was not a represented party under Rule 4.2, the court found there was a professional conduct violation under Rule 4.3 (prohibiting misrepresenting intentions to an unrepresented party), since the investigators engaged the salesman in conversation without disclosing their purpose. *Id.* at 1158.

Although *Midwest Motor Sports* is considerably more restrictive than *Gidatex,* we think there is a discernable continuum in the cases from clearly impermissible to clearly permissible conduct. Lawyers (and investigators) cannot trick protected employees into doing things or saying things they otherwise would not do or say. They cannot normally interview protected employees or ask them to fill out questionnaires. They probably can employ persons to play the role of customers seeking services on the same basis as the general public. They can videotape protected employees going about their activities in what those employees believe is the normal course. That is akin to surveillance videos routinely admitted. *See Fisher v. National R.R. Passenger Corp.,* 152 F.R.D. 145, 150–55 (S.D.Ind.1993).

Here we have secret videotapes of station employees reacting (or not reacting) to plaintiffs and other persons posing as consumers. Most of the interactions that occurred in the videotapes do not involve any questioning of the employees other than asking if a gas pump is prepay or not, and as far as we can tell these conversations are not within the audio range of the video camera. These interactions do not rise to the level of communication protected by Rule 4.2. To the extent that employees and plaintiffs have substantive conversations outside of normal business transactions, we will consider whether to bar that evidence when and if it is offered at trial.

## CONCLUSION

For the above reasons, defendants' motion for a protective order is denied.