UNITED STATES of America EX REL. William CEAS Jr. and William Ceas Jr., Individually; Plaintiff,

v.

CHRYSLER GROUP LLC; Defendant.

Case No. 12-cv-2870

United States District Court, N.D. Illinois, Eastern Division.

Signed June 10, 2016

886

Michael Charles Rosenblat, Michael C. Rosenblat, P.C., Northbrook, IL, AUSA, United States Attorney's Office, David Joel Chizewer, Emily Danya Gilman, Goldberg Kohn Ltd., Clinton A. Krislov, Kenneth Todd Goldstein, Krislov & Associates, Ltd., Chicago, IL, for Plaintiffs.

Brian William Bell, Anthony Joseph Monaco, Julie D. Miller, Swanson, Martin & Bell, Chicago, IL, for Defendant.

## ORDER

Robert M. Dow, Jr., United States District Judge

Defendant's motion for a protective order [53] is denied. Defendant's motion to stay discovery [59] pending resolution of its motion for a protective order is denied as moot in light of this order. Defendant's motion for the entry of a confidentiality order [59] is denied without prejudice. The parties are given one week from the date of this order to file an agreed confidentiality order or to file their alternate proposals for resolution by the Court.

## STATEMENT

Defendant moved the Court for the entry of a protective order [53] requiring Plaintiff/Relator William Ceas, Jr. to return documents that he obtained from his allegedly unauthorized use of Defendant's DealerCONNECT program, and to identify the log-in information that he has used (and/or is still using) to access that program. By way of background, Chrysler dealerships use a program called Dealer-CONNECT, through which the dealership enters a vehicle's VIN and odometer reading and the program produces a VIP Summary Report listing the vehicle's Factory Warranty Coverage eligibility. Plaintiff's whistleblower claim is based on several VIP Summary Reports that he obtained from the DealerCONNECT program, which allegedly demonstrate that Defendant misrepresented the warranty cover-

age on multiple vehicles that it sold to the government. Defendant now alleges that Plaintiff accessed, and likely continues to access, Defendant's DealerCONNECT program without authority. Defendant requests that the Court order Plaintiff to return all documents that he obtained through the DealerCONNECT program, and that Plaintiff identify any log-in credentials that he has used and is currently using (Plaintiff currently works for a Chrysler dealership) to access that program.

A district court has broad discretion over pretrial discovery rulings. *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air–Conditioning Engineers, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014). A court may, for good cause, limit the scope of discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Before restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir.2002) (citations omitted).

Defendant argues that Plaintiff's unauthorized use of the DealerCONNECT program is oppressive in that it violates Model Rule of Professional Conduct 4.2 (adopted by Local Rule 83.5), which prohibits an attorney from communicating about the subject to a lawsuit with another represented party without consent from the represented party's attorney. Essentially, Defendant says that the VIP Summary Reports are "communications" from Defendant, and that whenever Plaintiff or his attorney's access the database, they are communicating with Defendant with-

out permission from Defendant's counsel. The Court is not persuaded.

■ As Plaintiff notes, while the VIP Summary Reports are, in a sense, communications, they are not the type of communications protected by Rule 4.2. Instead, Plaintiff's accessing of the DealerCONNECT database is more akin to the "clearly permissible" investigatory surveillance discussed in *Hill v. Shell Oil Co.*, 209 F.Supp.2d 876, 879–80 (N.D.Ill.2002), where the plaintiffs videotaped otherwise-protected employees as they went about their everyday activities in an effort to expose the defendants' discriminatory business practices. The relevant fact for Rule 4.2 purposes was that the surveilled communications were statements that the defendants would have made anyway—*i.e.*, no protected employee was tricked into divulging information that would have been withheld had the individual's attorney been present. So too here, the VIP Summary Reports are communications made in the ordinary course of business, and Plaintiff and/or Plaintiff's counsel are not tricking Defendant into divulging information by observing these ordinary-course communications. In addition, Rule 4.2 applies only to *attorneys*, and Defendant does not explain why Plaintiff's accessing of the DealerCONNECT database should be interpreted as an act by Plaintiff's counsel.

■ Plaintiff also raises several other salient points in opposition to Defendant's motion. First, Plaintiff notes that even if the documents in question are confidential, and even if Plaintiff's taking of these documents violates his confidentiality agreement with Defendant, the public policies associated with *qui tam* cases trump the terms of that confidentiality agreement. The Seventh Circuit has recognized the policy importance of not discouraging whistleblowers from undertaking investigative efforts that might expose fraud against the government, which extends to the whistleblower's retention of discoverable information in violation of confidentiality agreements. See *Fanslow v. Chicago Mfg. Ctr., Inc.*, 384 F.3d 469, 479 (7th Cir.2004) (whistleblowers have broad protection for actions taken in investigating and furthering FCA claims (citing 31 U.S.C. § 3730(h))); *United States ex rel. Grandeau v. Cancer Treatment Ctrs. of Am.*, 350 F.Supp.2d 765, 773 (N.D.Ill.2004) (holding that an employee could not be held liable for a breach of contract action because of the strong public policy supporting whistleblower action in FCA cases). One limitation is that the whistleblower's "collection of materials [must be] reasonably related to the formation of a case," *Shmushkovic v. Home Bound Healthcare, Inc.*, 2015 WL 3896947, at *1–2 (N.D.Ill. June 23, 2015), but here there is no question that the VIP Summary Reports are relevant to Plaintiff's claims—they are the very basis for those claims.

■ Second, even if the Court were to order Plaintiff to return the documents that he obtained through the DealerCONNECT system, Plaintiff could simply request those very same documents through discovery. The scope of discovery under Federal Rule of Civil Procedure 26 is broad and liberal, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), and the documents in question clearly fall within that scope. Having Plaintiff return these documents only to have Defendants then send them back to Plaintiff would be an unnecessary inefficiency for both parties, and would run contrary to the purpose of Rule 26. See Fed. R. Civ. P. 1 ("These rules * * * should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

■ Third, Plaintiff, who currently works for a Chrysler dealership (Naperville Chrysler Jeep Dodge Ram), says that he needs to access the DealerCONNECT database to perform his job. Setting aside Plaintiff's argument that Defendant's request to limit Plaintiff's access to the database could be interpreted as a form of retaliation, the Court notes its obligation to consider the totality of the circumstances in deciding whether to grant a protective order. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Here, the burden on Plaintiff (*i.e.*, the inability to adequately perform his job duties) outweighs the alleged benefit of enforcing a confidentiality agreement in a whistleblower action.

■ Fourth (and closely related to the second and third arguments), Plaintiff has no further need to access documents for this case outside of the discovery process. In other words, the "protections" afforded by a protective order are not necessary because the information in question is no longer entitled to protection. While Defendant obviously is disgruntled by Plaintiff's use of its DealerCONNECT system, the proper remedy, if there is one, is not a protective order.

In its reply brief, Defendant mostly ignores Plaintiff's arguments. Instead, Defendant says that judicial estoppel precludes Plaintiff from arguing that his actions do not constitute "communications" with Defendant (citing the Court's prior reference to the VIP Summary Reports as "statements"), and describes in various ways the "egregiousness" of Plaintiff's actions. These arguments are unavailing. Even if the VIP Summary Reports are "statements" or "communications," for the reasons explained above, they are not the type of statements or communications protected by Model Rule of Professional Conduct 4.2. And even if Plaintiff's actions were (or are) egregious, that is not the legal standard for obtaining a protective order. Defendant's motion [53] is therefore denied.

Also before the Court is Defendant's motion for the entry of a confidentiality order and to stay discovery pending the resolution of Defendants' motion for a protective order. [59.] Based on the entry of this order, Defendant's request for a stay is denied as moot. As to Defendant's request for the entry of a confidentiality order, Plaintiff says that this request is premature because the parties are in the process of trying to draft an agreed confidentiality order. As such, that aspect of Defendant's motion is denied without prejudice. The parties are given one week from the date of this order to file an agreed confidentiality order. If the parties cannot reach an agreement, they should file their alternate proposals for resolution by the Court.