In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-2555

MARGARITA ZAYAS,

*Plaintiff-Appellant,*

*v.*

ROCKFORD MEMORIAL HOSPITAL,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 11-C-50290 — **Philip G. Reinhard**, *Judge.*

ARGUED NOVEMBER 14, 2013 — DECIDED JANUARY 30, 2014

Before WOOD, *Chief Judge*, and CUDAHY and ROVNER, *Circuit Judges.*

CUDAHY, *Circuit Judge.* This matter concerns allegations of employment discrimination under Title VII and the Age Discrimination in Employment Act. Margarita Zayas worked for Rockford Memorial Hospital (the Hospital) as an ultrasound technician from November 1999 until her discharge in April 2011. Larry Griesman, Zayas' direct supervisor, was responsible for hiring and terminating Zayas. Zayas is Puerto Rican

and was fifty-five years old at the time of her termination, the oldest ultrasound tech at the Hospital. She brought both a national origin discrimination claim and a hostile work environment claim under Title VII, 42 U.S.C. § 2000e et seq., as well as an age discrimination claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

Zayas was discharged for sending Griesman a series of disrespectful emails, despite her supervisor's warnings. In April of 2010, Griesman and a human resources employee held two meetings in which they warned Zayas about sending Griesman inappropriate emails. Thereafter, Zayas continued to write emails of the same nature, which caused Griesman to issue Zayas a formal written warning on July 28, 2010. Disregarding informal and formal warnings, Zayas sent three more equally unprofessional emails to Griesman. Consequently, on April 22, 2011, Griesman discharged Zayas for sending emails that "were perceived as negative, unprofessional and disrespectful towards her managers and peers."

Despite the insubordinate emails, Zayas contends that the Hospital terminated her because of her age and national origin. Zayas' age discrimination claim is hardly supported, since it is based solely on the fact that she was the oldest technician in the department, and was replaced by a younger employee. Zayas provided no other evidence to support this claim. As for the national origin claims, Zayas offers a series of incidents in an attempt to establish discrimination and a hostile work environment:

> (1) Griesman singled Zayas out in a meeting and said "you think everyone is out to get you;" (2) a co-worker "almost got physical with her" and told Zayas

she should quit; (3) another co-worker posted a poem about "firing trouble" above Zayas' locker; (4) on one occasion, Zayas walked into an office and all the other technicians got up and left; (5) several technicians called her "Maria" even though she asked them not to; (6) Zayas asked a co-worker if a patient received a Spanish translator and the co-worker responded by saying "if they are in this country, they need to learn to speak English;" (7) Zayas attempted to move an ultrasound machine, but a co-worker obstructed her ability to move it; and (8) a co-worker exited a room without closing the door to which Zayas responded: "Why aren't you closing the door? Is it because I am Puerto Rican?"

Zayas also cites satisfactory job performance appraisal scores for 2008 and 2009 as evidence of meeting her employer's legitimate job expectations, contending that the emails were simply a pretext for discrimination.

The district court granted the Hospital's motion for summary judgment on all three claims. We review the grant of summary judgment *de novo*, construing all facts and reasonable inferences in Zayas' favor. *Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1001 (7th Cir. 2013).

**I.**

We turn first to the discrimination claims. Zayas alleges discrimination on the basis of both her age and national origin. Plaintiffs may support these claims through a direct or indirect method of proof. *See Martino v. W. & S. Fin. Grp.*, 715 F.3d 195, 201 (7th Cir. 2013).

The direct method requires courts to inquire whether a rational juror could infer discriminatory intent from the direct and the circumstantial evidence in the record. *Id.* at 201–02. Zayas cannot rely on the direct method, since the record contains neither explicit declarations of a discriminatory motive nor sufficient circumstantial evidence for a rational jury to infer discrimination. With respect to her age, the only relevant circumstances are the fact that her replacement is a younger woman (as were *all* of Zayas' co-workers), which is not sufficient on its own to establish an age discrimination claim. With respect to her ethnicity, Zayas' evidence is similarly limited: she relies on a single derogatory comment about Spanish speakers made by Zayas' *co-worker* (rather than her supervisor) and on the fact that her replacement is white. On either ground, Zayas is a long way from being able to prove a discriminatory motive directly. *See e.g., Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003)("circumstantial evidence … must point directly to a discriminatory reason for the employer's action.").

Therefore, Zayas only asserts discrimination under the indirect method of proof standard. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the indirect method, Zayas must establish a prima facie case by showing: (1) she is a member of a protected group; (2) she satisfied her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably. *Naficy v. Ill. Dep't of Human Servs.*, 697 F.3d 504, 511 (7th Cir. 2012). If these elements are met, the burden shifts to the defendant to introduce a legitimate, non-discriminatory reason for the employment action. *Id.* On rebuttal, the plain-

tiff must provide evidence demonstrating that the defendant's stated reason is pretextual. *Id.* at 511–12.

It is undisputed that Zayas has satisfied the first and third prongs under the indirect method of proof: she is a member of a protected class, Puerto Rican and over the age of 40, and suffered an adverse employment action, termination. As for the second and fourth prongs, Zayas still lacks sufficient evidence to overcome summary judgment.

Zayas points to her 2008 and 2009 satisfactory performance evaluations as proof that she met the Hospital's legitimate job expectations. Zayas' reliance on these evaluations is misplaced. The question is not whether she *ever* satisfied the Hospital's expectations, but whether she met the Hospital's expectations *at the time she was fired*. *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 545–46 (7th Cir. 2002). Further, our analysis of an employer's legitimate expectations does not merely consider whether a plaintiff's actual job performance was satisfactory—it is a much broader analysis, which allows fact-finders to consider factors such as insubordination and workplace camaraderie. *See Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 540 (7th Cir. 2007).

In any event, Zayas' performance evaluations do not overcome the more recent disciplinary actions imposed on her. The record indicates that Griesman warned Zayas, twice in the same month, about sending inappropriate emails. Nevertheless, Zayas continued to write emails of the same nature, which drove Griesman to issue a written warning. Zayas ignored that written warning and wrote an additional three equally unprofessional emails. Thus, the paper trail of emails, disregarding Griesman's written warning, indicates

that Zayas was not meeting her employer's expectations in the year before her termination.

Finally, to satisfy the fourth prong of the *McDonnell Douglas* test Zayas must identify a similarly situated employee, who is not Puerto Rican, who engaged in the same behavior and was treated more favorably. The similarly situated employee must be "directly comparable to her in all material respects." *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Although "precise equivalence" is not required, a plaintiff still needs to show that a comparator employee was "treated more favorably by the same decisionmaker," even though they were both "subject to the same standards of conduct" and engaged in similar, but not necessarily identical, conduct. *Coleman v. Donahoe*, 667 F.3d 835, 846–48, 850 (7th Cir. 2012).

Zayas lacks evidence tending to show a similarly situated employee, who is not Puerto Rican or under the age of 40, that engaged in similarly unprofessional communications, and was not disciplined for it. Instead, Zayas makes broad assertions that she was treated differently because other ultrasound technicians were not "subject to similar harassment," "singled out," and "subjected to unwarranted discipline." Such broad conclusions are insufficient to satisfy this prong of the test. *See, e.g.*, *Oest v. Ill. Dept. of Corr.*, 240 F.3d 605, 615 (7th Cir. 2001)("uncorroborated generalities are insufficient to support a Title VII claim"). Based on the absence of comparator evidence Zayas cannot establish a prima facie case for either of her discrimination claims.

Zayas further alleges that her disrespectful emails were a mere pretext for the Hospital's discriminatory motives. She contends that a jury should assess the appropriateness of her

emails and determine whether they were sufficiently inappropriate to justify her termination. Zayas misconstrues the pretext inquiry. The pretext inquiry focuses on whether the stated reason for the adverse employment action is *in fact* the reason for it—not on whether the stated reason is accurate or fair. *See e.g.*, *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 471 (7th Cir. 2000)("it is not … the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee."). Thus, it is irrelevant if Zayas' emails were not egregious enough to justify her termination, as long as Griesman believed they were. Zayas offered no evidence to show that Griesman lied about his reaction to the emails. Therefore, we have no trouble finding that Zayas' emails were not a pretextual basis for her termination.

For the foregoing reasons, Zayas has not met her burden under the indirect method of proof standard, and summary judgment is affirmed as to both discrimination claims.

**II.**

Zayas also alleges that she was subjected to a hostile work environment. To establish a prima facie case for a hostile work environment claim, she must show: (1) that she was subject to unwelcome harassment; (2) the harassment was based on her national origin; (3) the harassment was severe or pervasive so as to alter the conditions of her work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability. *See Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 731 (7th Cir. 2009).

As the district court held, Zayas' hostile work environment claim fails on the second prong of this test, even if we assume that the other three are met. "[A]lleged harassment

must be sufficiently connected to race before it may reasona-
bly be construed as being motivated by the defendant's hos-
tility to the plaintiff's race." *Beamon v. Marshall & Ilsley Trust
Co.*, 411 F.3d 854, 863–64 (7th Cir. 2005)(internal citations
omitted). Zayas has not shown a sufficient connection be-
tween her national origin and the incidents she complains of.
In fact, only two of the incidents that she offered into evi-
dence have any relation whatsoever to her national origin.

The first incident involved a co-worker who, referring to
a patient who only spoke Spanish, commented to Zayas that
people in the United States need to learn English. Though
the remark may have been insensitive, the district court cor-
rectly found that this was an isolated incident that occurred
two years before Zayas' termination and was derogatory to
non-English speaking immigrants, rather than Puerto Ricans
specifically. Moreover, Griesman responded to the situation
by immediately addressing the matter with the employee
who made the comments. Ironically, in the only other inci-
dent related to her national origin, it was Zayas *herself* who
made her Puerto Rican heritage an issue, by asking a co-
worker: "Why aren't you closing the door? Is it because I'm
Puerto Rican?"

The rest of Zayas' allegations lack any clear connection to
her national origin. While such a connection does not have to
be explicit, there must be *some* connection, for "not every
perceived unfairness in the workplace may be ascribed to
discriminatory motivation merely because the complaining
employee belongs to a racial minority." *Id.* at 863. In light of
the scant evidence in the record relating to this claim, we
have no trouble holding that any hostility directed at or felt
by Zayas was not connected with her ethnicity.

Though the foregoing is sufficient to affirm the district court with respect to the hostile work environment claim, we also note that Zayas' arguments fail the third prong of the test. To satisfy this prong, Zayas must show that her workplace was both objectively and subjectively hostile. *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). Unlike the subjective element, it is difficult to show that the harassment was *objectively* "severe or pervasive as to alter the conditions of the victim's employment and to create an abusive working atmosphere." *Hardin* v. *S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999). Zayas offers only a short and exhaustive list of allegedly hostile occurrences over her long employment at the Hospital. This list falls short of showing the kind of systematic discriminatory behavior that hostile work environment claims require. *See e.g.*, *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 398 (7th Cir. 1999).

Although Zayas cites a number of hostile incidents, none of them were related to her national origin, nor were they objectively severe enough to survive summary judgment. The district court correctly noted that, although Zayas' co-workers did not like her, it was likely the result of "workplace pettiness," not her Puerto Rican origin. Thus, the district court's grant of summary judgment on the hostile work environment claim is affirmed.

### III.

Despite Zayas' many claims, there is insufficient evidence to find that her termination was based on anything but the many disrespectful emails she sent to Griesman. As a result, the district court properly granted summary judgment in favor of the Hospital with respect to all three claims. Accordingly, WE AFFIRM.