In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2767

CATHERINE WANKO,

*Plaintiff-Appellant*,

*v.*

BOARD OF TRUSTEES OF INDIANA
UNIVERSITY,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 16-cv-02789 — **Tanya Walton Pratt**, *Judge*.

ARGUED MARCH 28, 2019 — DECIDED JUNE 17, 2019

Before RIPPLE, MANION, and SYKES, *Circuit Judges*.

MANION, *Circuit Judge*. Catherine Wanko brought this suit under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, alleging Indiana University (IU) discriminated against her by having her retake her entire first-year curriculum at IU's School of Dentistry. In discovery, IU produced spreadsheets containing the demographics and grades of the students in Wanko's class. Those spreadsheets showed no student, let alone one outside of a protected class, was similarly situated

to Wanko. Wanko moved to compel the production of the actual student records, but that motion was denied. As Wanko was unable to show a sufficient comparator for her discrimination claim, the district court granted summary judgment to IU. We affirm.

**I.**

Wanko is a naturalized United States citizen from Cameroon. She began her dental studies at IU in Fall 2014. During the 2014–2015 school year, Wanko failed to complete successfully two courses: Removable Prosthodontics (RP) and Single Tooth Indirect Restorations (STI). Based on her grades in those classes, IU allowed Wanko the opportunity to remediate RP in Summer 2015 and retake STI in Spring 2016.

A total of eight students, including Wanko, attempted to remediate RP. To pass the remediation course, a student had to score at least 80% on the exam. Wanko scored 71%. On June 22, 2015, IU notified Wanko she would have to repeat the whole first-year curriculum. She was the only student in her class to be held back. After Wanko failed to complete her second attempt at STI in Spring 2016, IU dismissed her.

Not long thereafter, Wanko, through counsel, reached out to IU. In response, IU's general counsel emailed Wanko's counsel stating one other student, identified as "Student #2," also failed STI in Spring 2015. IU's counsel explained IU allowed Student #2 to proceed into the second-year curriculum "because she failed only one class and had a cumulative GPA above 2.0." The email showed Student #2 had a Spring 2015 GPA of 2.131. Wanko's GPA was 1.965.

Wanko brought suit in October 2016. She claimed IU discriminated against her on the basis of race when it failed to

promote her to the second-year curriculum.[1] In her complaint, Wanko alleged two or three similarly situated, non-black students were promoted when she was not. That charge was based on a conversation Wanko had with the professor who taught STI in 2015. He told her two or three students failed his course and would retake it the next year. He did not reveal any demographics about those students.

In discovery, Wanko sought information about the demographics and grades of her former classmates. In response, IU produced spreadsheets showing the GPA, grades, race, and gender of each student in Wanko's class. IU did not provide the students' names, but it assigned every student a number as an identifier. IU says it chose this method of production out of concern for its responsibilities under the Family Educational Rights and Privacy Act of 1974 (FERPA), which set up safeguards concerning the release of student information. *See* 20 U.S.C. § 1232g. IU's spreadsheets showed only two students had failed both RP and STI in the 2014–2015 school year: Wanko and another black female, the "Student #2" from the general counsel's email (IU identifies her as "Student #57 in the spreadsheets, but we will continue to refer to her as "Student #2"). Unlike Wanko, however, Student #2 successfully remediated RP and was allowed to proceed to the second-year curriculum despite her failing grade in STI.

Wanko was not satisfied with IU's spreadsheets. She moved to compel production of the actual student records, claiming she needed them to know which white students in

---

[1] Wanko also claimed racial discrimination motivated her dismissal from IU in 2016. The district court dismissed that claim on IU's motion. Wanko does not appeal that ruling.

her class failed STI. She argued the spreadsheets are unreliable because the GPA for Student #2 is different than the GPA the general counsel had reported earlier. The general counsel had provided a GPA of 2.131, whereas the spreadsheets reported a GPA of 2.568. Responding to Wanko's motion, IU explained the discrepancy was because the general counsel provided Student #2's Spring 2015 GPA, but the spreadsheets provided Student #2's cumulative GPA.

A magistrate judge orally denied Wanko's motion during a telephonic discovery conference. Because IU had provided Wanko with the demographic and grade information in the spreadsheets, the judge concluded Wanko had not shown she needed the actual student records. The judge also concluded Wanko had not shown the spreadsheets lacked veracity. After that oral denial, Wanko filed a written motion making the same arguments, which the magistrate judge also denied.

Wanko objected to the district court. While that objection was pending, IU moved for summary judgment. Wanko, rather than responding to the motion, moved to postpone ruling on summary judgment because of the student-records issue.

The district court resolved all three motions in one order. First, it overruled Wanko's objection to the magistrate judge's decisions, holding the magistrate judge reasonably concluded the information in the spreadsheets was sufficient. Second, it denied Wanko's motion to postpone ruling on summary judgment, finding Wanko had not shown a good faith reason why she could not respond to IU's motion for summary judgment. Third, the district court granted IU's motion for summary judgment, concluding Wanko could not succeed on her

discrimination claim because she could not identify a similarly situated, non-black student who received better treatment.

## II.

In this appeal, for good reason Wanko does not contest the merits of the district court's ruling on summary judgment. A careful review of the record before us compels the entry of summary judgment for IU. Wanko has no evidence of a similarly situated, non-black student who received better treatment than she received. *See Brewer v. Bd. of Trustees of Univ. of Ill.*, 479 F.3d 908, 921 (7th Cir. 2007) (requiring a plaintiff to show she experienced "worse treatment than that of similarly situated students not in the protected class"). The closest possible comparator is Student #2, a black female who failed to complete RP and STI on her first tries. But she, unlike Wanko, managed to remediate RP, so she is not similarly situated to Wanko. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (explaining a comparator must be "directly comparable to [the plaintiff] in all material respects").

Because the record weighs significantly against her, Wanko insists parts of it are not accurate. She argues the district court erred when it (1) overruled her objection to the magistrate judge's decision denying her motion to compel discovery of the actual student records and (2) denied her motion to postpone summary judgment.

"Managing the discovery process is the district court's business … ." *Brill v. Lante Corp.*, 119 F.3d 1266, 1275 (7th Cir. 1997). "The district court is in the best position to decide the proper scope of discovery and to settle any discovery disputes." *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 785 (7th

Cir. 2013) (internal quotation marks omitted) (quoting *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996)). Accordingly, we deferentially review discovery decisions for abuse of discretion. *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 629 (7th Cir. 2004). This includes decisions whether to defer ruling on summary judgment motions. *See Helping Hand Caregivers, Ltd. v. Darden Restaurants, Inc.*, 900 F.3d 884, 890 (7th Cir. 2018). There is no such abuse here.

Concerning the denial of Wanko's motion to compel, Wanko wants actual student records to help her find a comparator for her Title VI claim. She says IU's spreadsheets are not acceptable because they are unreliable, pointing to the GPA discrepancy relating to Student #2. But the magistrate judge considered that argument and rejected it, and the district court accepted that rejection. Wanko has given us no reason to conclude those decisions were beyond the bounds of discretion.

We reach the same conclusion concerning the denial of Wanko's motion to postpone summary judgment. Federal Rule of Civil Procedure 56(d) allows the district court to "defer consider[ation]" of a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Essentially, the rule requires the party facing summary judgment to "make a good faith showing that it cannot respond" to the motion for summary judgment. *See United States v. All Assets & Equipment of West Side Bldg. Corp.*, 58 F.3d 1181, 1190 (7th Cir. 1995) (referring to the deferral provision's former location at subsection (f)).

Wanko argues she could not respond to the motion for summary judgment without the actual student records.

Wanko certainly has a need for information about her fellow classmates (races, grades, etc.), and without such information could not meaningfully respond to a motion for summary judgment. The problem for Wanko is she already has this information in the spreadsheets IU provided. Having rejected Wanko's argument concerning the veracity of those spreadsheets, the district court reasonably concluded Wanko had no need for the actual student records. Thus, Wanko did not provide "a good faith reason" for her failure to respond to IU's motion. It was not an abuse of discretion for the court to deny Wanko's Rule 56(d) motion and rule on IU's motion for summary judgment.[2]

## III.

As the district court did not abuse its discretion in resolving these discovery disputes, we AFFIRM.

---

[2] In her brief, Wanko couches her arguments in terms of due process, i.e., without the student records she was not given "the opportunity to be heard at a meaningful time and in a meaningful manner." *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). There was no due process violation here. The magistrate judge and the district court allowed Wanko to argue her discovery issues. Just because they ruled against her on discovery matters does not mean they deprived her of due process.